**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

|  |  |  |
|---|---|---|
| RENATA P. MAGLIETTI, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3-05-cv-1819 (JCH) |
| | : | |
| vs. | : | |
| | : | SEPTEMBER 29, 2007 |
| R. JAMES NICHOLSON, SECRETARY, | : | |
| UNITED STATES DEPARTMENT OF | : | |
| VETERANS AFFAIRS, | : | |
| | : | |
| Defendant. | : | |

**RULING RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 38),**
**and DEFENDANT'S SUPPLEMENTAL MOTION TO DISMISS PLAINTIFF'S**
**AMENDED COMPLAINT (Doc. No. 53)**

Plaintiff, Renata Maglietti, brings this complaint against the defendant, R. James

Nicholson, Secretary of the United States Department of Veterans Affairs (hereinafter

"the government"), alleging employment discrimination under Title VII and the

Rehabilitation Act, violation of her rights under the First and Fifth Amendments to the

Constitution, and violation of her rights under the Federal Personnel Practices laws.

See Amended Complaint (Doc. No. 51). This action stems from the employment

transfer of Maglietti from the Veterans Affairs ("VA") facility in Newington, Connecticut,

to the one located in West Haven, Connecticut. Id. The government moves for

summary judgment on all of Maglietti's claims.[1]

---

[1]The government moved for Maglietti's constitutional and administrative claims to be
dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6). See Def.'s Suppl.
Mot. to Dismiss at 1 (Doc. No. 53). However, where, as here "matters outside the pleading are
presented to and not excluded by the court, the motion shall be treated as one for summary

1

## I. FACTS[2]

Maglietti works as a Medical Technologist, Grade 9, Step 10, for the VA Healthcare System, where she has been employed since October 21, 1974. <u>See</u> Def.'s Loc.R.Civ.P. 56(a)(1) Statement ("Def.'s Stat.") at ¶ 1 (Doc. No. 38). On June 8, 2004, Maglietti was involved in a verbal altercation with her coworker, Eduardo Marchi-Rivera. <u>Id.</u> at ¶ 4. On June 16, 2004, Maglietti was reassigned from the Patient Care Services Department at the VA facility in Newington, to the Patient Care Services Department at the VA facility in West Haven. <u>Id.</u> at ¶ 2; Pl.'s L.Rule.Civ.P. 56(A)(2) Statement ("Pl.'s Stat.") at ¶ 4 (Doc. No. 56). The decision to transfer Maglietti was made by Dr. Gary Stack, Chief of Pathology and Laboratory Medicine. <u>Id.</u> at 4. Dr. Stack did not speak to Maglietti before making the decision to transfer her, and there was no investigation into the altercation, though the site manager did speak to Marchi-Rivera. Pl.'s Stat. at ¶ 2-3.

On June 18, 2004, Maglietti filed an informal grievance with her employer concerning this reassignment. <u>Id.</u> at ¶ 5. On July 6, 2004, Maglietti received notice that Dr. Stack had upheld his decision to reassign her. <u>Id.</u> at ¶ 6. On July 7, 2004, Maglietti filed a formal grievance. <u>Id.</u> at ¶ 8. She received the decision upholding her

_____

judgment and disposed of as provided in Rule 56." Fed.R.Civ.P. 12(b). Maglietti has responded to the government's Motion to Dismiss as if it were a motion for summary judgment. <u>See</u> Pl's Mem. in Opp. to Def.'s Mot. for Summ. Judg. (Doc. No. 57) and Pl.'s Loc.R. 56(a)(2) Stat. (Doc. No. 56). Therefore, all of her claims will be determined as if the Motion were originally filed as one for summary judgment.

[2]For the purposes of the instant motion, the court accepts facts undisputed by the parties as true and resolves disputed facts in favor of the non-moving plaintiff, where there is evidence to support her allegations.

reassignment on July 21, 2004, from the Director of the VA Connecticut Healthcare System.  Id. at 9.  That decision was rescinded by the Director on July 30, 2004, but reinstated on August 16, 2004, following a fact-finding summary issued, on August 13, 2004, by the business manager of the VA facility in West Haven suggesting that the transfer be upheld. Id. at ¶ 10-3.  The decision on her formal grievance was again rescinded on August 7, 2004, and then reinstated on September 10, 2004.  Id. at ¶ 14-5.  Maglietti's grade did not change with the transfer, and her salary increased from $55,896 to $56,570 as a result of the change in geographic location.  Id. at ¶ 2.

## II.     STANDARD OF REVIEW ON MOTION FOR SUMMARY JUDGMENT

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgement as a matter of law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000).  Once the moving party has met its burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 255, and present such evidence as would allow a jury to find in his favor in order to defeat the motion. Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

In assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought.  Anderson, 477 U.S. at 255; Graham, 230 F.3d at 38.  "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party."  Carlton, 202 F.3d at 134.  "When reasonable persons, applying the proper legal standards, could differ in their responses to the question" raised on the

basis of the evidence presented, the question must be left to the jury.  <u>Sologub v. City of New York</u>, 202 F.3d 175, 178 (2d Cir. 2000).

### III.    DISCUSSION

#### A.    Defendant's Motion for Summary Judgment (Doc. No. 38)

##### 1.    Plaintiff's Title VII Claim

The analysis of whether the VA subjected Maglietti to disparate treatment based on her gender proceeds under the burden-shifting framework of <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).  <u>See</u> <u>Fitzgerald v. Henderson</u>, 251 F.3d 345, 356 (2d Cir. 2001).  The plaintiff is first required to establish a prima facie case of discrimination.  <u>See</u> <u>Texas Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 252-53 (1981).  A prima facie case for disparate treatment is established by showing that 1) the plaintiff is a member of a protected class; 2) the plaintiff performed her job adequately; 3) the plaintiff suffered an adverse employment action; and 4) that the adverse employment action occurred under conditions giving rise to an inference of discrimination.  <u>Burdine</u>, 450 U.S. at 254.  Once a plaintiff has established a prima facie case, a rebuttable presumption of discrimination arises, and the burden shifts to the defendant to offer a legitimate, non-discriminatory reason for its actions. <u>See</u> <u>id.</u>  Upon the employer's articulation of a nondiscriminatory reason for the employment action, the presumption of discrimination that arises with the establishment of the prima facie case drops out.  <u>See</u>  <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 510-11 (1993).  The burden then shifts back to the plaintiff to fulfill her ultimate burden of proving that the defendant intentionally discriminated against her in the employment action.  <u>Reeves v.</u>

Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143, (2000). In order to satisfy this burden, a plaintiff may attempt to prove that the legitimate, non-discriminatory reason offered by a defendant was not the employer's true reason, but was a pretext for discrimination. Id.

A prima facie case combined with a showing that an employer's asserted justification is false is sometimes, but not always, sufficient to permit a discrimination claim to survive summary judgment. Schnabel v. Abramson, 232 F.3d 83, 89-91 (2d Cir. 200) (citing Reeves, 530 U.S. at 142). The court must "examin[e] the entire record to determine whether the plaintiff could satisfy his 'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff.' " Schnabel, 232 F.3d at 90 (quoting Reeves, 530 U.S. at 143, 120 S.Ct. 2097). The plaintiff need not show that gender was the only factor motivating any adverse employment action she suffered in order to make a showing of employment discrimination. See 42 U.S.C. § 2000e-2(m); see also Desert Palace, Inc. v. Costa, 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003). "The 'ultimate issue' in an employment discrimination case is whether the plaintiff has met her burden of proving that the adverse employment decision was motivated at least in part by an 'impermissible reason,' i.e., a discriminatory reason," regardless of whether the case is presented as one of single or dual motive. Stratton v. Dep't for the Aging for New York, 132 F.3d 869, 878 (2d Cir.1997).

In a Title VII discrimination claim, an employment action is considered "adverse" if the employee suffers a "materially adverse change in the terms and conditions of employment." Joseph v. Leavitt, 465 F.3d 87, 90 (2d Cir. 2006)(internal quotation

omitted). An adverse employment action is "more disruptive than a mere inconvenience or an alteration of job responsibilities." Id. Prototypical examples of adverse employment actions include termination, demotion via a reduced wage, salary, or job title, a material loss of benefits, or significantly reduced responsibilities. Demoret v. Zegarelli, 451 F.3d 140, 151 (2d Cir. 2006) (citation omitted).

The government argues that Maglietti cannot establish a prima facie case of discrimination under the Title VII or the Rehabilitation Act because she did not suffer an adverse employment action. Def.'s Mem. in Supp. of Mot. for Summ. Judg. (Def.'s Mem. in Supp.), Attach. 1 at 12 (Doc. No. 38). The court disagrees. Maglietti has demonstrated that her transfer from the Newington to the West Haven facility resulted in an approximately two-hour increase in her commute each day. Aff. of Renata P. Maglietti, ¶ 21, Pl.'s Loc. Rule 56(A)2 Stat., Ex. A (Doc. No. 56). While an increased commute does not constitute an adverse employment action per se, the Second Circuit has held that a change resulting in a "much more taxing commute" may constitute a adverse employment action. Terry v. Ashcroft, 336 F.3d 128, 145 (2d Cir. 2003). Furthermore, Maglietti has shown a change in her job duties since the transfer that a reasonable trier of fact could consider "significantly reduced responsibilities." Pl.'s 56(a)(2) Stat. at ¶ 36 (Doc. No. 56)(specifically she has "lost her position on the Vision Committee which evaluates new instruments," and no longer does work in the chemistry section, preventative maintenance calibrations, or laboratory testing).

The government then argues that Maglietti cannot establish a prima facie case of employment discrimination because she has supplied insufficient evidence to give rise to an inference that gender was a factor in her adverse employment action. Def.'s

Mem. in Supp. at 13. The court disagrees. Maglietti's argument that the transfer gave

rise to the inference of discrimination is that:

> [the incident] was initiated by Mr. Marchi-Rivera, not Mrs. Maglietti. Mr.
> Marchi-Rivera had previously been involved with other altercations with
> several female coworkers. Mr. Marchi-Rivera was not disciplined for
> many of these altercations. Mr. Marchi-Rivera was not disciplined for the
> altercation he initiated with Mrs. Maglietti. Rather, it was Mrs. Maglietti, a
> female, who was disciplined with a transfer to West Haven.

Pl.'s Mem. at 8; see also Pl.'s 56(a)2 Stat. at ¶¶29-30. The court notes that Maglietti's

burden in establishing a prima facie case is "minimal." McGuinness v. Lincoln Hall, 263

F.3d 49, 53 (2d. Cir. 2001) (citing St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506

(1993). In McGuinness, the Second Circuit found that a white woman made out a prima

facie case under the McDonnell Douglas analysis by proffering evidence sufficient for a

trier of fact to find that the defendant had offered her a less desirable severance

package than one it offered to a black male employee, who was also a executive-level

employee and was discharged two days after plaintiff. Id. The McGuiness court relied

on the "similarly situated" test from the Second Circuit's ruling in Shumway, which allows

a plaintiff to show the existence of an inference of discrimination where she is treated

differently from an employee similarly situated to her in "all material respects." Id.

(quoting Shumway v. United Parcel Service, Inc., 118 F.3d 60, 64 (2d Cir. 1997).

Maglietti has shown that Marchi-Rivera was similarly situated to her in that they worked

in the same department and had "roughly equivalent rank," despite having different job

titles. Id. at 54. To support her contention that she and Marchi-Rivera were similarly

situated, Maglietti states that the duties performed by technologists at West Haven could

be performed by a technician like Marchi-Rivera and that the vacancy Maglietti filled at

West Haven was left by a technician such as Marchi-Rivera and not a technologist such as herself.  Pl.'s 56(a)(2) at ¶¶ 37 and 40.

Having established a prima facie case for gender discrimination under Title VII the burden then shifts to the government to prove that it had legitimate and non-discriminatory reasons for its actions.  Burdine, 450 U.S. at 254.  The government argues that Maglietti was transferred because "of a history of verbal altercations with Mr. Marchi-Rivera . . . and because there was a need for a Medical Technologist such as plaintiff in the West Haven facility."  Def.'s Mem. at 15.  Dr. Stack testified that at the time of the transfer, "[w]e did not have a vacancy for someone with [Marchi-Rivera's] skill set at West Haven."  Testimony of Dr. Gary Stack, Def.'s Rule 56(a)(1) Stat., Ex. 3 at 5.

Maglietti argues that the government's contention that she was transferred because she was qualified for the positions open at West Haven, and Marchi-Rivera was not, is a pretext.  Pl.'s Mem. at 8.  Maglietti offers three reasons:

> [f]irst, the tasks and duties presently performed by the plaintiff in West Haven can be performed by a technician, like Mr. Marchi Rivera.  Second, the vacancies in West Haven which are currently being filled by technologists were actually left by technicians.  Third, the tasks presently performed by the plaintiff in West Haven are similar to those currently being performed by Mr. Marchi-Rivera in Newington.

Pl.'s Mem. at 4.  Maglietti has thus offered some evidence that the VA's reasons for transferring her rather than Marchi-Rivera were false.

However, establishing a prima facie case and offering evidence of pretext alone does not suffice to establish a finding of gender discrimination.  See McGuinness, 263 F.3d at 55.  The final question in the analysis is "simply whether the evidence, taken as a whole, is sufficient to support a reasonable inference that prohibited discrimination

occurred." Id. (internal quotations omitted). The court finds that there is a material issue of fact concerning whether Maglietti was transferred due to her gender based on her claim that she was transferred rather than her male coworker, especially in light of her assertion that Marchi-Rivera had been involved in altercations with several female coworkers without being disciplined and that the position she was transferred to had previously been occupied by a technician. Pl.'s Mem. at 8; see also Pl.'s 56(a)2 Stat. at ¶¶ 29-30 and 40. Based on this evidence, a jury could reasonably determine on the basis of the facts before the court that Maglietti was transferred on the basis of her gender. Therefore, the government's Motion for Summary Judgment as to Maglietti's Title VII claim is denied.

### 2.    Plaintiff's Rehabilitation Act Claim

The Rehabilitation Act states that, "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal assistance." 29 U.S.C. § 794(a). The standards for determining whether an employer has discriminated under the Rehabilitation Act are the same as those under the Americans with Disabilities Act (ADA). 29 U.S.C. § 794(d). In analyzing a claim under the Rehabilitation Act, the court relies on the McDonnell Douglas burden-shifting analysis. Banks v. Potter, 253 F.Supp.2d 335, 344 (quoting Regional Econ. Cmty. Action Program, Inc. v. City of Middletown, 294 F.3d 35 n. 2 (2d Cir. 2002). To establish a prima facie case of discrimination under the ADA and the Rehabilitation Act, Maglietti must show that: (1) she is a disabled individual; (2) defendant had notice of her disability; (3) with reasonable accommodation she could

9

perform the essential functions of the job; and (4) defendant refused to make such accommodations. Hoffman v. MCI Wolrdcom Comm., Inc., 178 F.Supp.2d 152, 155 (D.Conn. 2001)(quoting Mitchell v. Washingtonville Cent. Sch. Dist., 190 F.3d 1, 6 (2d Cir. 1999)).

Under the Rehabilitation Act, a "disabled individual" is one who "(I) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment." 29 U.S.C. § 705(20)(B). A physical or mental impairment means "any physiological disorder, or condition . . . affecting . . . [the neurological system]." 29 C.F.R. §1630.2(h)(1). Whether a disability exists must be determined on a "case-by-case" basis. Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 198 (2002). Not every impairment is a "disability;" to qualify as disabled under the Rehabilitation Act and the ADA, a plaintiff must show both that her physical or mental impairment limits a "major life activity" and that this limitation is "substantial." 42 U.S.C. § 12102(2)(A). The Supreme Court has restricted "major life activities" to those activities "that are of central importance to daily life." Toyota, 534 U.S. at 197. The Rehabilitation Act guidelines published by the Department of Health, Education and Welfare (HEW) provide a non-exhaustive list of what constitutes "major life activities," which includes "walking, seeing, hearing, . . . [and] performing manual tasks." Id. at 195 (quoting 45 C.F.R § 84.3(j)(2)(ii) (2001)). Similarly, E.E.O.C. regulations interpreting the term define it as including "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing,

speaking, breathing, learning, and working."[3]  29 C.F.R. § 1630.2(I) (2006).  Whether an

impairment is a "disability" under the ADA is to be determined by taking into account any

corrective or mitigating measures.  Sutton v. United Air Lines, Inc., 527 U.S. 471, 482

(1999).  The question is not whether the particular impairment affects an individual's

ability to perform tasks associated with a specific job; instead, the focus must be on

whether that person "is unable to perform the variety of tasks central to most people's

daily lives."  Toyota, 534 U.S. at 200.

        The government argues that Maglietti has failed to prove that she is a qualified

individual with a disability under the Rehabilitation Act.  Def.'s Reply Mem. at 1 (Doc. No.

62).  The court agrees.  Other than her own testimony, Maglietti has offered no evidence

that she has a "seizure disorder."  District Courts in this Circuit have granted summary

judgment in cases where the plaintiff offered only her own uncorroborated testimony as

to a disability.  See e.g. Cotz v. Mastroeni, 476 F.Supp.2d 332, 369 (S.D.N.Y.

2007)(granting summary judgment against plaintiff offered only "unsubstantiated

allegations" and "no medical evidence to substantiate or further elaborate her

allegations" of having two herniated disks) and Douglas v. Victor Capital Group, 21

F.Supp.2d 379, 392 (S.D.N.Y. 1998)(granting summary judgment against plaintiff who

failed to submit any admissible medical evidence to support his prima facie case for

disability).  Maglietti testifies to the existence of medical records regarding her condition

in her deposition, and those records were marked as an exhibit during the deposition;

---

[3]Although the Supreme Court declined to decide how much deference to give to the E.E.O.C.
regulations, see Toyota at 194, the Second Circuit has referred to them in deciding what constitutes a
"major life activity."  See Capobianco, F.3d at 56.

however, they were never submitted to the court.  Depo. of Maglietti, Ex. C to Pl.'s Stat. at 6-11 (Doc. No. 56).

Even assuming <u>arguendo</u> that Maglietti has a seizure disorder, she fails to prove that this disorder "substantially limits a major life activity."  42 U.S.C. § 12102(2)(A). While Maglietti testifies that she is fatigued, has trouble concentrating, and has headaches (Depo. of Maglietti, Ex. C to Pl.'s Stat. at 85 (Doc. No. 56)), she is unable to make a causal connection between these ailments, her increased commute, and her seizure disorder because such a causal connection would require the technical or specialized knowledge of a doctor.  Fed. R. Evid. 701(c).  Maglietti attempts to make that connection by testifying to the conclusions of medical experts.  <u>See</u>, <u>e.g.</u>, <u>id.</u> at 84 (where Maglietti testifies to her doctor's belief of her need for anti-seizure medication). This testimony is inadmissable hearsay under Federal Rule of Evidence 801(c) and 802. She also testifies to the diagnosis of a medical condition; for example, by testifying that she has nocturnal seizures triggered by a lack of sleep, or that two or more seizures is classified as epilepsy.  <u>Id</u> at 83-4 and 52.  This testimony is opinion testimony by a lay witness requiring  "specialized knowledge," which is inadmissable under Federal Rule of Evidence 701.[4]  Fed.R.Evid. 701.  No reasonable trier of fact could conclude that Maglietti is a qualified disabled person under the Rehabilitation Act on the record before the court. Therefore, summary judgment on her claim under the Rehabilitation Act is granted.

─────────────────────

[4]Fed.R.Evid. 701 provides that, "[i]f the witness is not testifying as an expert, the witness' testimony in the form of opinions is limited to those opinions or inferences which are . . . (c) not based on scientific, technical or other specialized knowledge within the scope of Rule 702."  Fed.R.Evid. 701.

**B.    Defendant's Supplemental Motion to Dismiss Plaintiff's Amended Complaint (Doc. No. 53)**

**1.    Jurisdiction under Bivens**

Maglietti asserts her Constitutional and administrative claims pursuant to 42 U.S.C. § 1983.[5]  Am. Complaint, ¶ 5 (Doc. No. 51).  Such a claim must be brought against a state, not federal, actor.  See 42 U.S.C. § 1983 (permits suit against a person acting under the authority of any "State or Territory or the District of Columbia").  However, because Maglietti alleges that the Nicholson acted under color of federal, rather than state, law the court will construe Maglietti's Constitutional and administrative claims as an action under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 (1971).  See Tavarez v. Reno, 54 F.3d 109, 109-10 (2d Cir. 1995).  Although the Supreme Court has held that an individual has a private right of action against a federal agent under the Fourth Amendment in Bivens, the court has not found a similar private right of action to arise under every Constitutional Amendment.  See Erwin Chemerinksy, Federal Jurisdiction 592-3 (4th ed.).

The Supreme Court has held in Davis v. Passman, 442 U.S. 228, 243-4 (1979), that a private right of action exists for claims under the Due Process clause of the Fifth Amendment.  Therefore, Maglietti may assert claims for violations of her due process

---

[5]In her Complaint, Maglietti claims that, "Defendant's conduct violated the Federal Personnel Practices laws."  Am. Comp. ¶ 25.  Maglietti does not address this claim in her Opposition to Summary Judgment; therefore the claim is deemed abandoned, and the government's Motion for Summary Judgment as to Count Six is granted.

and equal protection rights under the Fifth Amendment.[6]

The court finds that Maglietti also has a First Amendment cause of action under Bivens. In Bush v. Lucas, 462 U.S. 367 (1983), the Supreme Court found that a private right of action may exist for a violation of the First Amendment under Bivens, though it found that the plaintiff in Bush had no such right because alternative remedies for his complaint existed under the Civil Service Reform Act ("CRSA"). Bush 462 U.S. at 390; see also Chemerinsky, at 599-600. Unlike the plaintiff in Bush, Maglietti's First Amendment claim in not one of retaliation covered by the CSRA. This court concludes that Maglietti can bring a claim for violation of the First Amendment pursuant to Bivens. See Bush, 462 U.S. at 369; 5 U.S.C. § 2301.

### 2. Preemption

The United States argues that Maglietti's Constitutional and administrative claims should be dismissed because they are pre-empted by her Title VII claims. Def.'s Suppl. Mot. to Dismiss (Def.'s Suppl. Mot.) at 1-2 (Doc. No. 53). The Supreme Court held in Brown v. General Services Administration that, "section 717 of the Civil Rights Act of 1964, as amended, provides the exclusive judicial remedy for claims of discrimination in federal employment." Brown v. General Services Administration, 425 U.S. 820, 835 (1976). The Court found that the "balance, completeness and structural integrity" of

---

[6]Maglietti asserts her equal protection claim under the Fourteenth Amendment to the Constitution. Amended Complaint, Third Count at ¶26. However, for claims against the federal government, the Supreme Court has read the requirement of equal protection under the law into the Due Process clause of the Fifth Amendment. ERWIN CHEMERINSKY, CONSTITUTIONAL LAW 642 (2d ed.)(discussing Bolling v. Sharpe, 347 U.S. 497 (1954)). Because the analysis is the same under the Fourteenth or Fifth amendments, this error in Maglietti's complaint will not effect the analysis of her Equal Protection claim. Id. citing Buckley v. Valeo, 424 U.S. 1, 93 (1976).

section 717 indicated that Congress intended it to preempt other more general remedies.  Id. at 832.  For example, both Fifth and First Amendment claims tied to section 717 actions have been dismissed under the Brown rule.  Rottman v. U.S. Coast Guard Academy, 630 F.Supp. 1123, 1124 (D.Conn. 1986)(internal quotations omitted).

However, the Brown rule does not preclude every Constitutional claim that may arise out of the same employment action.  See  Joseph v. Leavitt, 386 F.Supp.2d 487, 492 n.9 (S.D.N.Y. 2005);  Rottman, 630 F.Supp. at 1125 9 ("Title VII does not preclude separate remedies for unconstitutional action other than discrimination based on race, sex, religion or national origin.")(internal quotations omitted).  The Court in Brown was concerned that Title VII would be eviscerated if employment discrimination claims could be brought under different, less demanding theories.  Under this reasoning, claimed violations of rights not covered by Title VII are not precluded because they would not threaten the purview of Title VII.  Therefore, the court finds that Maglietti's Constitutional claims are not preempted by Title VII because they allege the violation of different substantive rights than what could be redressed under Title VII.

### 3.    Plaintiff's First Amendment Claim

It is well-accepted that "public employees do not surrender all their First Amendment rights by reason of their employment."  Garcetti v. Ceballos, __ U.S. __, 126 S. Ct. 1951, 1957 (2006).  However, "[i]n measuring the extent of this right, the interests that must be carefully balanced are the interests of the employee, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees."  Sheppard v. Beerman, 317 F.3d 351, 355 (2d Cir. 2003) (quoting

15

Pickering v. Bd. of Educ., 391 U.S. 563, 568 (1968)). As a threshold matter, a public employee seeking to establish a First Amendment retaliation claim "must show that (1) his speech addressed a matter of public concern, (2) he suffered an adverse employment action, and (3) a causal connection existed between the speech and the adverse employment action." Konits v. Valley Stream Cent. High School Dist., 394 F.3d 121, 124 (2d Cir. 2005) (internal quotation marks omitted). The Second Circuit has held that the requirement that speech be on a "matter of public concern" also applies to associational conduct in claims asserting a violation of the First Amendment right to freedom of association. Cobb v. Pozzi, 363 F.3d 89, 102 (2d Cir. 2004).

The first question the court must ask in analyzing a First Amendment claim is whether the public employee spoke "as a citizen upon matters of public concern" or "as an employee upon matters of personal interest." Connick v. Myers, 461 U.S. 138, 147 (1983); see also Melzer v. Bd. of Ed., 336 F.3d 185, 193 (2d Cir. 2003). If the court finds that the employee spoke as an employee on a matter of personal interest, "the employee has no First Amendment cause of action based on his or her employer's reaction to the speech." Garcetti, 126 S. Ct. at 1958.

The government argues that Maglietti's conduct, which was the filing of an employee grievance, was not a matter of public concern because it was merely expressive of her dissatisfaction with her working conditions and thus "a matter of personal interest." Def.'s Suppl. Mem. at 3 (Doc. No. 53). The court finds that the government mistates the conduct at issue. Maglietti alleges that she was transferred because of her status as a non-bargaining employee; the conduct at issue was not her filing of a grievance but her alleged associational activity of not joining a union.

16

Therefore, the question is whether Maglietti's non-union status touches on an issue of public concern. The standard under Connick for whether an employee's speech addresses a matter of public concern is "determined by the content, form and context of a given statement, as revealed by the whole record." Connick, 461 U.S. at 147-8. This standard, which makes sense in the context of retaliation for speech, is difficult to apply in the context of an association claim. See Balton v. City of Milwaukee, 133 F.3d 1036, 1039 (7th Cir. 1998)("A Pickering/Connick balancing test, so useful in resolving public employee speech cases, is not easily transferable to freedom of association cases."). The Second Circuit faced a very similar question in Cobb, but declined to decide it. Cobb, 363 F.3d at 107(declining to decide "whether union membership alone touches on a matter of public concern and therefore provides a proper basis for a First Amendment retaliation claim"). No court in this Circuit since Cobb has addressed the question of whether union membership, or the choice not to join a union, could be associational conduct touching on a matter of public concern for the purposes of the First Amendment analysis.

In determining whether bargaining status alone touches on a issue of public concern, the court finds instructive the treatment of union activities in First Amendment retaliation claims. In Clue v. Johnson, 179 F.3d 57, 61 (2d Cir. 1999), the Second Circuit held that "retaliation solely for union activity raises a public concern under Connick." Id. at 61 (internal quotation omitted). While the Clue opinion does not analyze why this should be the case, the reasoning of Connick supports this holding. See Connick, 461 U.S. at 144-5. The Connick Court reviewed Supreme Court First Amendment precedents leading up to Pickering and found that the issue in those cases

17

was "whether government employees could be prevented or chilled by the fear of discharge from joining political parties and other associations that certain public officials might find subversive." Connick, 461 U.S. at 145 (internal quotations omitted). Those decisions found that the right of public officials to participate in public affairs was grounded in one purpose of the First Amendment protection of speech, which was "to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people." Id. (citing Roth v. United States, 354 U.S. 476, 484 and New York Times Co. v. Sullivan, 376 U.S. 254, 269 (1964)). Such speech on public issues is "more than self-expression; it is the essence of self-government" and as such "occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection." Id. (internal quotations omitted). Union organizing is clearly the type of associational activity directed at "political and social changes" that government censorship might chill.

Given that union activities can constitute speech of public concern under Connick, the court finds that union membership analogously can be an associational activity that touches on public concern. Like the Sixth Circuit, the court has "no doubt that an employee who is disciplined solely in retaliation for his membership in and support of a union states a valid first amendment claim under Connick and Pickering." Boals v. Gray, 775 F.2d 686, 693 (6th Cir. 1985).

Similarly, the court finds that where a plaintiff is transferred solely in retaliation for her refusal to join a union, she states a valid first amendment claim. In Abood v. Detroit Board of Education, 431 U.S. 209 (1997), the Supreme Court recognized that public employees have an associational right under the First Amendment not to join a union,

18

though the Court held that Congress could abridge that right in the interest of regulating labor relations. Abood, 431 U.S. at 222. Specifically, the court found that public employees may "refuse to associate" with a union for the purposes of activities the union undertakes to promote political views or candidates. Id. at 324-5.

However, the court also agrees with the Sixth Circuit that "an employee's speech, activity or association, merely because it is union-related, does not touch on a matter of public concern as a matter of law." Boals, 775 F.2d at 693. The burden is on Maglietti to show that her choice not to associate with a union is one of public concern. See Cobb, 363 F.3d at 102 ("a public employee bringing a First Amendment freedom of association claim must persuade a court that the associational conduct at issue touches on a matter of public concern.").

The court finds that Maglietti has not met this burden. Maglietti's First Amendment claim is based solely on her status as a non-bargaining employee. See Pl.'s Mem. at 4 ("plaintiff was transferred because she was not a union member."). The court finds that the mere lack of affiliation with the union, with nothing more, is not enough evidence to establish that Maglietti's non-union status was actually associational activity on her part. As is made clear by the case law summary in Connick, discussed above, the Supreme Court's concern in protecting the First Amendment associational rights of public employees is that their right to join, or refrain from joining, unions or other political organizations not be chilled by government coercion. See Connick, 461 U.S. at 144-5. Here, Maglietti has offered no evidence showing that she declined union membership or that union membership was ever even an option for her. The government cannot chill the association rights of employees to refrain from joining a

19

union when no such opportunity exists.  Therefore, the court finds that Maglietti has

failed to show that her non-union status is associational activity touching on a matter of

public concern and the government's Motion for Summary Judgment as to that claim is

granted.

### 4.    Plaintiff's Procedural Due Process Claim

Maglietti correctly states the standard two part test for a procedural due process

claim: 1) whether the plaintiff asserts a property interest protected by the Constitution

and 2) whether the defendant deprived plaintiff of that property interest without due

process.  See Strong v. Board of Education, 902 F.2d 208, 211 (2d Cir. 1990) and Pl.'s

Mem. at 14.  The United States Supreme Court and the Second Circuit have held that

sources independent of the Constitution -- most often state law -- define property or

liberty interests entitled to the protections of procedural due process.  Ezekwo v. NYC

Health and Hospitals Corporation, 940 F.2d 775, 782 (2d Cir. 1991) (citing Board of

Regents v. Roth, 408 U.S. 564, 577 (1972)).  A person has a property or liberty interest

for due process purposes if there are rules or mutually explicit understandings that

support her legitimate claim of entitlement to the interest.  Id.  Not every contractual

benefit rises to the level of a constitutionally protected property interest, Costello v. Town

of Fairfield, 811 F.2d 782, 784 (2d Cir. 1987) (a simple contract dispute does not give

rise to a cause of action under § 1983).  In determining if a plaintiff has a property

interest in an asserted right, a court must "weigh the importance to the holder of the

right."  Ezekwo, 940 F.2d at 783.

The court finds that Maglietti has successfully stated a claim such that a

reasonable jury could conclude that the VA violated her right to due process.  First,

Maglietti has a strong personal interest in her transfer. In <u>Ezekwo</u>, the Second Circuit distinguishes a medical student's interest in becoming chief resident from such "trivial and insubstantial interest[s]" as the "right to a specific vacation period" or the right to take off certain compensatory time. <u>Id.</u> at 783. Maglietti's interest in working in Newington is closer to the factual situation in <u>Ezekwo</u> than an interest in a "particular work assignment or benefit" because the increased commute and reduced work responsibilities are a more than trivial hardship. Second, Maglietti has offered evidence that in grieving her transfer, she relied on internal VA policies which were not followed. <u>See</u> Pl.'s 56(a)(2) Stat. at ¶¶ 22-3. Specifically, Maglietti asserts that the examiner of her informal grievance did not administer oaths when taking statements, or make the grievance file available to Maglietti, both of which violate policies established in the VA's policy on employee grievances. <u>Id.</u> Given that Maglietti's use of the informal grievance process was mandatory under the VA rules (Pl.'s 56(a)(2) Stat., Ex. B, at 6), she had a property interest in that grievance being conducted properly.

Having established that she had a property interest in the VA's adherence to its own procedures, Maglietti need only show that she was deprived of that interest. Maglietti has testified that these policies were violated, and the government has offered no evidence to refute her testimony. <u>See</u> Maglietti Aff., Pl.'s 56(a)(2) Stat., Ex. A at ¶ 20. Therefore, a reasonable jury could conclude that Maglietti was deprived of a property interest in violation of her right to procedural due process. The government's motion for Summary Judgment as to Maglietti's procedural due process claim is therefore denied.

**5.      Plaintiff's Substantive Due Process Claim**

Maglietti asserts that her substantive due process rights were violated by her transfer to West Haven. See Pl.'s Mem. at 16. There are various ways to allege a substantive due process claim, but Maglietti appears to assert only that the government's actions violated her Substantive Due Process rights because they were "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." County of Sacramento v. Lewis, 523 U.S. 833, 848 n.8 (1998). This "shocks the conscience" test is "necessarily imprecise." O'Connor v. Pierson, 426 F.3d 187, 203 (2d Cir. 2005). However, whether executive action shocks the conscience depends on the state of mind of the government actor and the context in which the action was taken. See County of Sacramento v. Lewis, 523 U.S. 833 (1998). The primary issue when considering this test is the state of mind of the defendant. See O'Connor, 426 F.3d at 203. Executive action shocks the conscious where it is intended to cause injury. Id.

Initially, Maglietti alleged that the person who decided to transfer her, Dr. Stack, acted out of "personal animosity" towards her because she had filed a grievance against him in 2002, the resolution of which required him to apologize to her. Amended Complaint at 6. However, Maglietti does not make this argument in her Opposition to Summary Judgment, nor does she create a factual record concerning Dr. Stack's state of mind in her Statement of Disputed Facts. See Pl.'s Mem. and Pl.'s 56(a)(2) Stat. Therefore, Maglietti appears to have abandoned her initial allegation that Dr. Stack made the transfer out of animosity derived from her earlier grievance. Based on the record before the court, no rational trier of fact could conclude that Dr. Stack had the requisite intent in transferring Maglietti such that his exercise of executive power "shocks

22

the conscious".  Therefore, Maglietti's Substantive Due Process claim must fail.

### 6.    Plaintiff's Equal Protection Claim

Maglietti argues that her transfer to West Haven was in violation of her right to equal protection under the law.  Pl.'s Mem. at 5.  It is unclear under what theory of equal protection – selective enforcement or "class of one" -- Maglietti asserts her claim.  See Cobb, 363 F.3d 89, 110 (acknowledging difference between selective prosecution equal protection claim and Olech-based equal protection claim)(citing African Trade & Info. Ctr. v. Abromaitis, 294 F.3d 355, 363-4 (2d Cir. 2002)).  On the one hand, she states that she "does not allege that the denial of her due process rights were the result of her membership in a protected class.  Rather the plaintiff claims that the defendants [sic] conduct was directed to her as an individual."  Pl.'s Mem. at 5-6.  She also states the standard for bringing an equal protection claim under the  so-called "class of one" analysis.  Id. at 6, citing  Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).  On the other hand, Maglietti argues that she "was treated differently from union members" and states the standard for a selective enforcement equal protection claim.  Pl.'s Mem. at 6-7, citing Crowley v. Courville, 76 F.3d 47 (2d Cir. 1996) and Zahra v.  Town of Southold, 48 F.3d 674, 683 (2d Cir. 1994).  Therefore, the court will analyze Maglietti's equal protection claim under both standards.

### a. "Class of One" Theory

To prevail on a "class of one" equal protection theory, Maglietti must show that she has been "intentionally treated differently from others similarly situated and that

there is no rational basis for the difference in treatment."[7]  Neilson v. D'Angelis, 409 F.3d

100, 104 (2d Cir. 2005)(quoting Olech, 528 U.S. at 564).  A plaintiff's burden on a "class

of one" claim is "extremely high," and a plaintiff cannot prevail absent a prima facie

showing that she is "identical in all relevant respects" to the individuals with whom she

compares herself.  Neilson v. D'Angelis, 409 F.3d 100, 104 (2d Cir. 2005) (citing Purze

v. Village of Winthrop Harbar, 286 F.3d 452, 455 (7th Cir. 2002)).  Such a prima facie

case requires the plaintiff to show that "no rational person could regard the

circumstances of the plaintiff to differ from those of a comparator to a degree that would

justify the differential treatment on the basis of a legitimate government policy".  Id. at

105.

        Maglietti has failed to create a material issue of fact concerning her prima facie

case under Olech.  See Pl.'s Mem. at 5-7.  The only statement in Maglietti's argument

that could be interpreted as an attempt to satisfy the "class of one" standard is her

statement that Marchi-Rivera "could have filled a vacancy in West Haven."  Id. at 7.

Maglietti's own testimony that the differences between her position as a technologist and

Marchi-Rivera's position as a technician involved two years of schooling and more

_____

        [7]While the Supreme Court used the words "similarly situated" to describe the standard
for a "class of one" claim, it is not the same standard of "similarity" as used in a discrimination
based on protected class claim.  Neilson, 409 F.3d 100, 104-5.  The difference comes from the
purpose of the showing.  Id.  In a claim of discrimination based on group status, the treatment
of persons in similar circumstances is offered "to provide, along with other evidence, an
evidentiary inference of the use of particular impermissible factors," whereas in a "class of one"
claim, "the existence of persons in similar circumstances who received more favorable
treatment than the plaintiff is offered to provide an inference that the plaintiff was intentionally
singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy
that an improper purpose -- whether personal or otherwise – is all but certain."  Id.  This is why
it is possible for the court to have concluded that Maglietti was similarly situated to Marchi-
Rivera for the purposes of her Title VII claim but not for the purposes of her equal protection
claim.

authority to work independently, would undermine her claim that they were identically situated. Maglietti Depo. at 20-21, Pl.'s 56(a)(2) Stat., Ex. C (Doc. No. 56). Without more evidence to establish that she and Marchi-Rivera were "identical in all relevant respects" such that no rational jury could determine that her transfer could have had no rational basis, Maglietti cannot establish a prima facie case for a "class of one" equal protection claim.

### b. Selective Enforcement Theory

To establish a selective enforcement claim, plaintiffs must show both "(1) that they were treated differently from other similarly situated individuals, and (2) that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights . . . ." Cobb, 363 F.3d at 110. Maglietti has already shown that she and Marchi-Rivera were similarly situated. See infra at 7-8; Dawson v. Bumble and Bumble, 398 F.3d 211, 220 n.1 (2d Cir. 2005) (noting that an equal protection employment discrimination claim is "subject to the same method of evaluation" as a Title VII claim). However, because the court determined that Maglietti has not established a violation of her First Amendment rights and she has asserted no other basis to support this prong, she cannot satisfy the second half of the test. Therefore, summary judgment as to Maglietti's selective enforcement equal protection claim is granted.

## IV.     CONCLUSION

For the forgoing reasons, Defendant's Motion for Summary Judgment (Doc. No. 38) and Supplemental Motion to Dismiss Plaintiff's Amended Complaint (Doc. No. 53)

are GRANTED as to Maglietti's Rehabilitation Act claim, First Amendment claim, Substantive Due Process claim, and Equal Protection claims and DENIED as to her Title VII and Procedural Due Process claims.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 29th day of September, 2007.

 /s/ Janet C. Hall
Janet C. Hall
United States District Judge